IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **JACKI PICK,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 7:22-cv-00112-O |
| | § | |
| **BRADLEY JAY RAFFENSPERGER,** | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendant.* | § | |

**DEFENDANT'S REPLY SUPPORTING HIS MOTION TO DISMISS OR
TRANSFER DUE TO LACK OF PERSONAL JURISDICTION OR, SUBJECT
<u>THERETO, DUE TO IMPROPER VENUE OR INCONVENIENT FORUM</u>**

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

    I.     INTRODUCTION ................................................................................................ 1

    II.    FACTS FROM PLAINTIFF'S JURISDICTIONAL DISCOVERY ....................... 2

    III.   PLAINTIFF HAS FAILED TO SHOW DEFENDANT'S PURPOSEFUL AVAILMENT ........................................................................................................ 3

        A.     Legal Standard ......................................................................................... 3

        B.     Defendant did not "aim" his book at Texas, knowing its "effects" would be felt there. ................................................................................................. 4

        C.     *Keeton's* adequate-circulation test is inapposite because Defendant is not a publication ................................................................................................ 7

        D.     The stream-of-commerce theory cannot apply in defamation cases ............ 7

    IV.   THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE .............. 9

    V.    THE NORTHERN DISTRICT OF GEORGIA IS A PROPER AND MORE CONVENIENT FORUM ....................................................................................... 9

    VI.   CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bigham v. Envirocare of Utah*,
   123 F. Supp. 2d 1046 (S.D. Tex. 2000) ....................................................................................9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................................6, 8

*Calder v. Jones*,
   465 U.S. 783 (1984).......................................................................................................*passim*

*Clemens v. McNamee*,
   615 F.3d 374 (5th Cir. 2010) ....................................................................................................5

*Davidson v. Time Warner, Inc.*,
   No. 6:94-cv-6, 1997 WL 405907 (S.D. Tex. Mar. 31, 1997) ....................................................8

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419 (5th Cir. 2005) ........................................................................................4, 5, 6, 7

*Gordy v. Daily News*,
   95 F.3d 829 ...............................................................................................................................7

*Hanson v. Denckla*,
   357 U.S. 235 (1958)..................................................................................................................9

*Hawbecker v. Hall*,
   88 F. Supp. 3d 723, 731 (W.D. Tex. 2015)...............................................................................9

*Immanuel v. Cable News Network, Inc.*,
   No. 4:21-CV-00587, 2022 WL 1748252 (E.D. Tex. May 31, 2022) ........................................9

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984)..............................................................................................................4, 7

*Kuykendall v. Amazon Studios LLC*,
   No. 5:20-CV-219, 2022 WL 19337992 (S.D. Tex. Mar. 18, 2022) ......................................6, 7

*Luv N' care, Ltd. v. Insta-Mix, Inc.*,
   438 F.3d 465 (5th Cir. 2006) ....................................................................................................8

*Mack v. Nelson*,
   No. A-12-CV-016-LY, 2012 WL 13145539 (W.D. Tex. May 17, 2012) .................................7

*McBride v. Owens*,
  454 F. Supp. 731 (S.D. Tex. 1978) ...................................................................................... 8

*Nuttal v. Juarez*,
  984 F. Supp. 2d 637 (N.D. Tex. 2013) ................................................................................. 9

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ................................................................................................ 4

*Soignet v. Ross*,
  No. 3:20-CV-2418-K, 2020 WL 7388603 (N.D. Tex. Dec. 16, 2020) ............................. 4, 5

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .............................................................................................. 10

*Walden v. Fiore*,
  571 U.S. 277 (2014) .............................................................................................................. 5

*Wilson v. Belin*,
  20 F.3d 644 (5th Cir. 1994) ............................................................................................. 5, 9

Defendant Bradford Jay Raffensperger ("Defendant") files this Reply Supporting His Motion to Dismiss or Transfer Due to Lack of Personal Jurisdiction or, Subject Thereto, Due to Improper Venue or Inconvenient Forum ("Reply" and "Motion," respectively):

## I.   INTRODUCTION

Plaintiff's Response in Opposition to Defendant's Motion ("Response") urges the Court to ignore and distort well-established constitutional law by holding that the nationwide promotion and sale of Defendant's book created the necessary minimum contacts with Texas for the Court to have specific personal jurisdiction over Defendant. According to Plaintiff, personal jurisdiction attaches here because the companies Defendant engaged to promote and sell his book nationwide (a) did not exclude Texas from their distribution plan and (b) permitted independent third-parties like Amazon.com ("Amazon"), Books-A-Million ("BAM"), and Barnes & Noble ("B&N") to sell his book in Texas. Those arguments invite manifest error and contravene personal-jurisdiction jurisprudence dating back to at least 1984 (the year *Calder v. Jones* was decided).

After two months of jurisdictional discovery, Plaintiff has not and cannot show that Defendant "aimed" the publication, promotion, and sale of his book at Texas, knowing that its "effects" would be felt there. In fact, the discovery proved the opposite: Defendant did not target Texas. Defendant's publisher and public relations company published and promoted his book nationally, but without "targeting" Texas specifically, as required under *Calder* and its progeny. Defendant's distributor distributed his book nationwide, but it did not ship any copies to Texas. Defendant's book was sold to Texas customers only by third-party retailers. These facts render Plaintiff unable to satisfy her burden of showing that Defendant purposely directed his activities toward Texas or purposefully availed himself of the privilege of conducting activities in Texas.

Because Plaintiff cannot credibly meet *Calder*'s requirements, she unsuccessfully attempts

1

to show Defendant's purposeful availment by asserting two inapposite theories: his book was (1) adequately circulated in Texas and (2) placed into the stream of commerce. However, both tests are inapplicable here because Defendant is not a publisher, but an author, and third parties, not Defendant himself, placed his book into the stream of commerce. The conduct giving rise to Plaintiff's claim was attributable to Amazon, BAM, B&N, and other retailers, not to Defendant.

Plaintiff's assertion that the Northern District of Texas is a proper venue also fails. The fact that she resides in Dallas, alone, is insufficient to satisfy her burden of showing that a "substantial part of the events or omissions giving rise to the claim occurred in Texas." Therefore, Defendant's Motion should be granted, or in the interests of justice, transferred to the Northern District of Georgia or the Dallas Division of the Northern District of Texas.

## II. FACTS FROM PLAINTIFF'S JURISDICTIONAL DISCOVERY

Plaintiff's jurisdictional discovery, including document productions, interrogatories, and five third-party depositions, further established that Defendant had no contacts with Texas.

*First*, discovery proved that Defendant entered into contracts with Forefront Books, LLC ("Forefront") and Javelin Group, LLC ("Javelin") to publish and promote his book nationally.[1] Neither Defendant nor those companies had a separate or specific plan to target any state in particular.[2] Javelin's Media Report proves that it focused its promotional efforts on reaching national audience through "national platforms," not a Texas-specific audience.[3]

*Second*, Defendant's distributor, Simon & Schuster, Inc. ("S&S")—which contracted exclusively with Forefront, not Defendant, to distribute Defendant's book, among many others—

---

[1] *See* Appendix Supporting Defendant's Motion ("Motion APP"), APP 1–2 at ¶ 5 (Doc. 10); *see generally* Plaintiff's Sealed Appendix in Support of Her Response ("Response APP"), APP 17–32 (Doc. 21).
[2] *See* Motion APP 1–2 at ¶ 5; Appendix to Defendant's Reply Supporting His Motion ("Reply APP") APP 2–6, Forefront Depo. Tr. at 9:7–23; 10:6–14; 14:23–15:15; 18:1–12; Response APP 25–45.
[3] Response at 13; *see also* Response APP 25–45.

2

did not target Texas specifically.[4] In fact, S&S did not have any contact with Texas concerning Defendant's book because it kept copies in its Tennessee warehouse and shipped none to Texas.[5]

*Third*, while independent, third-party book retailers, such as Amazon, B&N, and BAM, sold copies of Defendant's book in Texas,[6] none of them had any privity with Defendant.

In sum, Defendant had no contacts with Texas. Even his distributor had no contacts with Texas in connection with his book. All Plaintiff has been able to establish through jurisdictional discovery is that independent third-party retailers had contacts with Texas when selling Defendant's book, and those contacts cannot be imputed to Defendant.

### III. PLAINTIFF HAS FAILED TO SHOW DEFENDANT'S PURPOSEFUL AVAILMENT

Plaintiff's Response never attempts to argue that Defendant himself took any action to specifically target Texas (or the Texas market), or that he otherwise purposely availed himself of Texas's benefits and protections. All she can assert is that Defendant has not specifically excluded Texas from the book's national reach. But that assertion is legally insufficient to satisfy her burden.

### A. Legal Standard

In defamation actions involving publications, plaintiffs must show a defendant's purposeful availment by proving (1) an author or a publisher "'aims' a story at the state knowing that the 'effects' of the story will be felt there" or (2) a publication has adequate circulation in the

---

[4] *See* Reply APP 11, 13–14, S&S Dep. Tr. at 17:13–17 (noting that S&S is not involved "in determining a plan or a scope for the [book's] distribution"); 20:11–16 (answering that S&S has had no communications with Forefront discussing marketing or promotion efforts of the book or targeting specific states); 21:17–20 (answering that S&S did not have "any direct communication with [Defendant]").

[5] *See* Reply APP 8, 10, 15–17, at 14:10–15 (Q: "Do you know as you sit here today where within the United States any of these books was shipped to by Simon and Schuster?" A: "I know because after receiving the subpoena I looked at a sales report. **And we did not ship to Texas.** That I know.") (emphasis added); 16:1–4 (Q: "And you can confirm as you sit here today that Simon and Schuster did not deliver the book to anywhere in the state of Texas?" A: "That is correct."); 24:4–7 (Q: "At least with respect to all of the purchase orders of Integrity Counts, none of them were in Texas, none of them were shipped to Texas; is that correct?" A: "Correct."); 22:21–23:4 (answering that copies of Defendant's book were likely kept in the Tennessee warehouse).

[6] *See* Response APP 3–16, 46–89.

3

state. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 773–74 (1984) and *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)).

B. **Defendant did not "aim" his book at Texas, knowing its "effects" would be felt there.**

Under *Calder* and its progeny, a plaintiff can establish that defendant "aimed" its publication at the forum state by showing that "(1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Fielding*, 415 F.3d at 426 (citation omitted). Additionally, "the brunt of the harm from a defendant's alleged defamation had to be felt in the forum state." *Soignet v. Ross*, No. 3:20-CV-2418-K, 2020 WL 7388603, at *5 (N.D. Tex. Dec. 16, 2020) (citing *Revell v. Lidov*, 317 F.3d 467, 474 n.48 (5th Cir. 2002)). Plaintiff's Response attempts to depict a picture that all elements are met, but they are not.

First, Plaintiff misleadingly asserts that "the subject matter of the statements *involved* Plaintiff," a Texas resident, and that she "alone" is the source Defendant relied on.[7] This argument falls far short of the *Calder* test, both factually and legally. Contrary to Plaintiff's mis-portrayal, the subject matter of Defendant's statements and the sources they were derived from were not Ms. Pick. Defendant's statements concerned issues related exclusively to Georgia.[8] In the narrowest sense, the subject matters were (1) the State Farm Video that was presented at the Subcommittee Hearing that the Georgia Legislature held; and (2) Georgia election officials supposedly storing ballots in secret suitcases. Defendant's sources included his office staff and media reports, not Ms. Pick herself.[9] Even if Plaintiff were correct that she herself, whom Defendant's book never

---

[7] Response at 11 (emphasis added).
[8] Brief Supporting Defendant's Motion ("Motion Br.") at 9–10 (Doc. 9).
[9] Motion APP 2–3 at ¶ 8.

identified, was a source of the relevant information, she cites only a few pages from his book, which exceeds two hundred pages. "The Fifth Circuit explained that for *Calder* to apply, . . . the forum had to be the geographic focus, or focal point, of the publication." *Soignet*, 2020 WL 7388603, at *5–*6. Plaintiff cannot credibly assert—and rightfully did not—that Texas is the geographic focus or focal point of Defendant's statements because the only connection between the publication and Texas is Plaintiff's residence. *See id.*; *Fielding*, 415 F.3d at 425.

Second, a mere showing of suffering harm in the forum cannot support specific jurisdiction. *See Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010). By cherry-picking a couple of sentences from *Walden v. Fiore*, Plaintiff misconstrues the *Calder* Court's analysis, implying that the most important element is the "effects" or the injury element.[10] Quite the opposite, *Walden* declares that "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum" and that "the proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Here, none of Defendant's conduct was aimed at Texas and does not connect with Texas in any meaningful way. Thus, Plaintiff's alleged injury alone cannot connect him to Texas. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (holding that the place of tort alone is "not dispositive of whether jurisdiction is appropriate" when plaintiff placed "great weight" on place of injury). Further, recognizing that knowledge of a plaintiff's residence is essential to the "effects" portion of *Calder*, Plaintiff tries to impose constructive knowledge of her residence on Defendant, without any factual or legal support.[11] Defendant may have been aware that an unidentified woman was narrating the video, but he did not know who she

---

[10] Response at 10.
[11] *See* Response at 16.

5

was before publishing his book, let alone the state where she resided.[12] But again, the Fifth Circuit Court requires compelling evidence that Defendant directed his actions towards Texas and knew their effects would be felt there, and Plaintiff can offer no such evidence. *Fielding*, 415 F.3d at 425. Plaintiff must also concede that Defendant did not target her, or *any* other Texas resident, more than residents of other states. For example, while statements at issue never mention Plaintiff, they speak of Rudy Guiliani, a resident of New York (e.g., "Guiliani's sliced-up video," not Plaintiff's video).

Even with the benefit of jurisdictional discovery, Plaintiff can only establish that Defendant wrote his book, then sold and promoted it nationally (not excluding Texas). Only the independent third-parties, which were not in privity with Defendant, sold books in Texas. But the Court must examine Defendant's conduct alone when assessing whether it has personal jurisdiction over him—not the conduct of independent third-parties, especially of those with whom Defendant is not in privity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Kuykendall v. Amazon Studios LLC*, No. 5:20-CV-219, 2022 WL 19337992, at *7 (S.D. Tex. Mar. 18, 2022) ("[T]he forum-targeting actions of distributors are not generally imputed to the people that created the distributed product.") (citations omitted). Holding that these third-party retailers' unilateral conduct constitute some contact with the forum on the part of Defendant—which Plaintiff urges the Court to do—would fly in the face of well-established jurisdictional jurisprudence. Defendant's contracts were with Forefront and Javelin, and those were for nationwide promotion and publishing, not promotion or publishing aimed at Texas. Thus, Plaintiff's allegations and supporting documents do not confer specific jurisdiction over him.

---

[12] Motion APP 2–3 at ¶¶ 8–9 (stating that he was "unfamiliar with Ms. Jacki Pick at the time the Book was developed" and did not know that "she resided in Dallas, Texas, during that time period").

**C.     *Keeton's* adequate-circulation test is inapposite because Defendant is not a publication.**

Perhaps recognizing the weakness of her primary argument, Plaintiff's Response advances a fallback argument that "Defendant purposefully availed himself of the privileges of conducting activities in Texas because his Book has adequate circulation in Texas."[13] But the adequate-circulation test does not apply to Defendant because he is not a publication, like Hustler Magazine in *Keeton*. Because he simply authored a book, the *Calder* test, which Plaintiff cannot satisfy, is the test that applies. *See Kuykendall*, 2022 WL 19337992, at *3, *7 ("As stated before, the *Keeton* test is typically used for the publishers, or distributors, of defamatory materials."); *Keeton*, 465 U.S. at 781 n.13 (holding jurisdiction over the magazine for its circulation did not automatically lead to a finding of jurisdiction over individual defendant—the magazine's publisher, editor, and owner); *Mack v. Nelson*, No. A-12-CV-016-LY, 2012 WL 13145539, at *2 (W.D. Tex. May 17, 2012) ("Widespread circulation of the [magazine] in Texas may establish this court's jurisdiction over the publication itself, but not the publication's individual editors and authors.").[14]

**D.     The stream-of-commerce theory cannot apply in defamation cases.**

Lastly, Plaintiff tries to establish purposeful availment under a stream-of-commerce theory, but that theory cannot apply in this case. Plaintiff acknowledges as much, stating that such theory is "normally reserved for products liability cases."[15] Although she notes that the Fifth Circuit has

---

[13] Response at 9.
[14] Even if the Court were to apply the adequate-circulation test, Plaintiff mischaracterizes that test. Her Response attempts to make that test a numbers game, providing a range. *See* Response at 9–10. But both the quantity *and* regularity of circulation matter. *See Keeton*, 465 U.S. at 774, 781 (holding that court had jurisdiction because amount of circulation could not "be characterized as random, isolated, or fortuitous" and defendant had "continuously and deliberately exploited the [forum] market"); *Gordy v. Daily News*, 95 F.3d 829, 831, 836 (holding that newspaper purposefully availed itself in California because it had "*a small but regular* circulation of the [newspaper]" and subscribers in California) (emphasis added); *Fielding*, 415 F.3d at 426 (finding that jurisdiction over magazine company was improper because a small, weekly circulation did not satisfy *Keeton*'s "*regularly sold and distributed*" requirement) (emphasis added) (citation omitted).
[15] Response at 11.

conferred jurisdiction under the theory outside of products liability cases, she fails to articulate "public policy concerns that justify use of the stream-of-commerce" theory in defamation cases and fails to identify a single defamation case that applied the theory following *Calder*.[16]

Even if a stream-of-commerce theory could apply, no specific personal jurisdiction would exist because Defendant's conduct (engaging Forefront and Javelin) did not "place[] [his book] into the stream of commerce for Texas."[17] The third-party retailers, not even S&S, determined the states in which Defendant's book would be available for purchase.[18] *Burger King*, 471 U.S. at 473–76 ("[A] defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'") (citations omitted); *see also Davidson v. Time Warner, Inc.*, No. 6:94-cv-6, 1997 WL 405907, at *8 (S.D. Tex. Mar. 31, 1997) (finding that defendant's entering into a contract hoping for album distribution in the forum did not link him to the distribution chain: "Only after [the distributors] distributed the album could it be said to have 'entered the stream of commerce,' and [the recording artist] had no control over how the recording would be distributed."). Thus, Defendant's contract with Forefront, which in turn had a contract with S&S, cannot link him to the distribution channel since his book analogously did not enter the stream of commerce until after S&S's distribution, and he had no control over how or where his book would be distributed.

In sum, it cannot be said that Defendant purposefully availed himself to Texas such that it

---

[16] *Id*. at 11–12. The single case Plaintiff cites, *McBride v. Owens*, 454 F. Supp. 731 (S.D. Tex. 1978), predates *Calder v. Jones*. Further, Plaintiff's reliance on *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006), is misplaced because none of the facts present in *Luv N' care* is present in this case. Through S&S's deposition, Plaintiff learned that no copies of Defendant's book were shipped to Texas and that sales in a specific market were within the sole discretion of retailers. *See* Reply APP 9, 11–12, at 15:14–25; 17:13–17; 19:10–16. *Contra Luv N' care*, 438 F.3d at 470–71 (finding sufficient minimum contact because defendant filled approximately 65 purchase orders for items bound for the forum state and sent invoices to its vendor confirming the same, with invoices reflecting products' destinations).

[17] Response at 2.

[18] *See supra* Part II, notes 4–5 and accompanying text.

8

would be constitutional for this Court to exercise jurisdiction over him. To hold otherwise and deny Defendant's Motion would potentially subject every author of every work to being haled into every tribunal in every state where an independent third party decided to sell that author's work. Such a result upends decades of controlling law on constitutional purposeful-availment analysis and deprives Defendant of his due process and liberty. *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Belin*, 20 F.3d at 649.

### IV.   THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE

To argue that the Northern District of Texas is a proper venue, Plaintiff still solely relies on the proposition that a court *may* consider where the harm is allegedly felt when assessing a venue challenge. But courts have declared that plaintiff's residence alone, without more, is not dispositive in determining the proper venue. *See Immanuel v. Cable News Network, Inc.*, No. 4:21-CV-00587, 2022 WL 1748252, at *5 (E.D. Tex. May 31, 2022) (citing *Nuttal v. Juarez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013); *Bigham v. Envirocare of Utah*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000)). Further, Plaintiff's reliance on *Hawbecker v. Hall* is misguided because, unlike *Hall*, Defendant did not intend the effect of his statements to be felt in Texas—indeed, he had no reason to believe they might be felt there (indulging the notion that they were). 88 F. Supp. 3d 723, 731 (W.D. Tex. 2015) (finding that requisite **intent** for venue in defamation case existed because (1) defendant's writing explicitly referenced the plaintiff's residence and (2) defendant allegedly "personally" contacted the plaintiff's "friends, relatives, students, and employer in Texas"). Again, substantial events giving rise to Plaintiff's defamation action occurred in Georgia, and thus, the Northern District of Texas is an improper venue.

### V.   THE NORTHERN DISTRICT OF GEORGIA IS A PROPER AND MORE CONVENIENT FORUM

Plaintiff's Response limits physical evidence of purportedly defamatory statements to

Defendant's book, thereby asserting that relative ease of access to sources of proof is a neutral factor for both parties. However, if the case were to go forward, Defendant may need to conduct discovery to prove the truth of his statements; and the underlying sources for those statements, along with physical evidence and witnesses that can support them, can only be found in Georgia. Furthermore, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (granting mandamus relief based on district court's refusal to transfer the case from Eastern District of Texas to Western District of Texas when the case had "no factual connection with the events of th[e] case"). Because the purportedly defamatory remarks, the publication in which they appear, and the underlying events they describe all relate to Georgia's management of the 2020 Presidential Election, Georgia citizens have a far greater local interest than citizens of the Northern District of Texas, especially when compared to those of Wichita Falls (given that Plaintiff resides in Dallas). Lastly, Plaintiff's use of June 2022 statistics to argue that the court-congestion factor weighs against the venue transfer bolsters the precept that this factor is the "most speculative" and should be treated as having little to no weight in the Court's *forum-non-conveniens* analysis.[19]

## VI. CONCLUSION

For all the reasons set forth above and in the brief supporting Defendant's Motion, Defendant respectfully requests that the Court dismiss the Complaint for lack of personal jurisdiction or improper venue, or in the interests of justice, transfer this case to the Northern District of Georgia or to the Dallas Division of the Northern District of Texas.

---

[19] Motion Br. at 24 n.49; *see also* Response at 18. The more current statistics show that the median time intervals from filing to trial for civil cases during twelve-month period ending March 31, 2023, is 26.9 months in the Northern District of Texas and 33.9 months in the Northern District of Georgia, so the gap has substantially narrowed compared to the gap shown by the June 2022 statistics. *Table N/A—U.S. District Courts—Combined Civil and Criminal Federal Court Management Statistics (March 31, 2023)*, U.S. Cts., https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-3 (last visited June 20, 2023).

Dated: June 20, 2023.

                                         Respectfully submitted,

**Bradley Arant Boult Cummings LLP**

By: */s/ William S. Snyder*
**GENE R. BESEN**
Texas Bar No. 24045491
gbesen@bradley.com
**WILLIAM S. SNYDER**
Texas Bar No. 00786250
wsnyder@bradley.com
**HYEWON HANNAH CHOI**
Texas Bar No. 24131129
hchoi@bradley.com

Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
(214) 257-9800 (Telephone)
(214) 939-8787 (Facsimile)

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

     I certify that all current counsel of record have been served with a copy of the foregoing document via the Court's CM/ECF system according to Local Civil Rule 5.1 on this 20th day of June, 2023.

                                         */s/ William S. Snyder*
                                         William S. Snyder